IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANNIKO L. RHODES,              *
                               *
      Plaintiff,               *
                               *
vs.                            *  Civil Action No. 04-00580-CG-B
                               *
JO ANNE B. BARNHART,           *
Commissioner of                *
Social Security,               *
                               *
      Defendant.               *

## REPORT AND RECOMMENDATION

Plaintiff Anniko L. Rhodes ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security, which resulted in the cessation of her supplemental security income benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383c. This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was held on October 18, 2005. Upon consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner be **AFFIRMED.**

## I.   Procedural History

Plaintiff protectively filed an application for supplemental security income benefits on August 10, 1992, and alleged that she had been disabled since that date due to nerves (depression, post traumatic stress disorder and oppositional defiant disorder) and back problems related to a gunshot wound. (Tr. 26-40). Plaintiff

was awarded supplemental security income benefits on October 8, 1992. (<u>Id</u>. at 30). Following a continuing disability review, a Cessation Determination, finding that Plaintiff's disability ceased as of May 31, 2001, was issued on May 18, 2001. (<u>Id</u>. at 41-45). On November 14, 2001, the Cessation Determination was affirmed. (<u>Id</u>. at 70-82). Plaintiff, on November 29, 2001, filed a timely request for a hearing. (<u>Id</u>. at 83-85). A <u>de novo</u> hearing was initially scheduled before Administrative Law Judge Alan E. Michel ("ALJ" or "ALJ Michel") on March 1, 2002; however, it was continued to afford Plaintiff an opportunity to obtain legal counsel. (<u>Id</u>. at 293-298).

On April 12, 2002, ALJ Michel conducted a supplemental hearing, which was attended by Plaintiff and a vocational expert. (Tr. 299-319). In a decision dated May 15, 2002, ALJ Michel ruled that Plaintiff's disability properly ceased effective May 31, 2001. (<u>Id</u>. at 239-248). In reaching this conclusion, the ALJ determined that while Plaintiff has the severe impairments of borderline intellectual functioning and depression, her impairments do not, singly or in combination, meet or equal in severity an impairment listed in Appendix 1 to Subpart P of Regulations No. 4, and that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of work activities at the light exertional level. (<u>Id</u>.) Plaintiff sought review of the ALJ's decision, and upon review, the Appeals Council ("AC") reversed and remanded the

ALJ's May 15, 2002 decision.  (Id. at 249-253).   The ALJ was directed, upon remand, to:

- further evaluate the issue of medical improvement in accordance with 20 C.F.R. § 416.994;

- obtain evidence from a medical expert to clarify the nature and severity of Plaintiff's mental impairments;

- further evaluate Plaintiff's mental impairments in accordance with the special technique described in 20 C.F.R. § 416.920a and document application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 C.F.R. § 416.920a(c); and

- if warranted by the expanded record, obtain evidence from a VE to clarify the affect of the assessed limitations on Plaintiff's occupational base.

(Id. at 253).

On September 9, 2003, ALJ Michel conducted another hearing, which was attended by Plaintiff, her representative and a vocational expert. (Id. at 320-349). Pursuant to the AC's Order, the ALJ also sent interrogatories to psychiatrist Charles E. Herlihy, M.D. ("Dr. Herlihy") to clarify the nature and severity of Plaintiff's mental impairments. (Tr. 259-264). On November 20, 2003, ALJ Michel issued a second unfavorable decision. (Id. at 13-25). In the decision, the ALJ concluded that Plaintiff had experienced medical improvement such that she had "no diagnosable psychiatric impairments at the present time." (Id. at 22 (emphasis in original)). The ALJ found that Plaintiff has the severe

3

impairment of borderline intellectual functioning, but does not have an impairment or a combination of impairments listed in or medically equal to the Listings. (Id. at 22, 24). The ALJ then determined that Plaintiff had no past relevant work ("PRW"), that she retains the residual functional capacity ("RFC") to perform light and unskilled work, and, relying on the testimony of a vocational expert, that she can perform assembler, cleaner/housekeeper and parking attendant positions which exist in the national economy. (Id. at 24, Finding 7). Accordingly, the ALJ concluded that Plaintiff has not been under a disability at any time relevant to the decision. (Id., Finding 9). On December 16, 2003, Plaintiff filed a timely request for a review of the decision, but on August 17, 2004, the AC denied same and the ALJ's decision became final. (Tr. 3-5, 11-12). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. **Background Facts**

Plaintiff was awarded supplemental security income benefits in October 1992. (Tr. 30). Plaintiff has a 7th grade education and no past relevant work experience. (Id. at 58, 74, 304-305, 324-325).

At the April 2002 hearing, Plaintiff testified that she was born on January 6, 1976, is 5'1", and at that time, weighed 316 pounds. (Id. at 304, 309). Plaintiff also testified that she left

school in the 8th grade due to depression after being shot in the back. (Id. at 304-305). According to Plaintiff, she has a driver's license, but only drives when necessary. (Id. at 305-306). Plaintiff also testified that she lives by herself and is capable of bathing and dressing herself, cleaning the house and shopping; although, she is sometimes assisted by her sister or ex-husband. (Id. at 311-312). Plaintiff indicated that at one point, she tried to work at a warehouse, but was unable to do so because they wanted her to bend and pick up things, and when she stands for a long time, her back hurts. (Tr. 310-311). Plaintiff also indicated that she is overweight because she "can't get any insurance[.]" (Id. at 309).

At the September 9, 2003 hearing, Plaintiff testified that she had gotten back together with her husband and that they lived together. (Id. at 326). Plaintiff testified that she weighed 300 pounds, having recently lost 16 pounds. (Id. at 326-327). Plaintiff testified that the main problem that keeps her from working is her back and her depression. (Id. at 331). She testified that she has not gone to Mobile Mental Health Center ("MMHC") for treatment because she cannot afford it. (Id. at 331-332). Plaintiff testified that she has always been heavy and that her highest weight was 316 pounds, and that although she tries to lose weight, she always gains it back. (Tr. 333-334). She testified that when she exercises and walks, she has problems with

5

her back as a result of the gunshot wound.  (<u>Id</u>. at 334).
Plaintiff testified that while she is able to do some cleaning, her
husband and sister assists her with some of the household chores.
(<u>Id</u>. at 335).  She also testified that she spends her days watching
television and reading the Bible, and that she goes to church once
a month.  (<u>Id</u>. at 339).

**III. <u>Issues on Appeal</u>[1]**

A.   Whether the ALJ failed to determine whether Plaintiff met the
     requirements of the second prong of Listing 12.05C because
     even though a medical psychiatric expert found that her IQ met
     the first prong and recommended an orthopedic exam be
     performed, the ALJ did not determine whether she met the
     second prong of Listing 12.05C?

B.   Whether the ALJ failed to consider how Plaintiff's morbid
     obesity affected her ability to perform work-related functions
     under SSR 02-01p and SSR 96-8p, and whether her morbid obesity
     met the second prong of Listing 12.05C?[2]

C.   Whether the ALJ failed to obtain a consultative orthopedic
     examination or other medical evaluation to determine the
     extent of the residual effects of a gunshot wound and obesity
     on her ability to work under 20 C.F.R. § 416.919a(2)(b)(1)?

**IV.  <u>Analysis</u>**

   **A.   <u>Standard of Review</u>**

     In reviewing claims brought under the Act, this Court's role
is a limited one.  This Court's review is limited to determining 1)
whether the decision of the Secretary is supported by substantial

---

[1] While Plaintiff lists three issues on appeal, the crux of her argument
is that the ALJ erred by failing to find that her physical impairments, namely
obesity and the residual effects of a gunshot wound to her back, satisfy the
second prong of Listing 12.05.  <u>See</u> <u>infra</u>.

[2] Plaintiff mistakenly referenced Listing 12.04C, as opposed to 12.05C,
in her brief.  (Doc. 12).

evidence, and 2) whether the correct legal standards were applied. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990).[3]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").   In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.  <u>See</u>, <u>e.g.</u>, <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

**B.   <u>Discussion</u>**

An individual who applies for Social Security disability benefits must prove her disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically

---

[3]This Court's review of the Commissioner's application of legal principles is plenary.  <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[4] See, e.g., Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

Continued entitlement to disability benefits must be reviewed periodically. 20 C.F.R. § 416.994(a). A claimant's disability will be found to have ended if it is shown that medical improvement related to the claimant's ability to do work has occurred, and the claimant is currently able to engage in substantial gainful activity. 20 C.F.R. § 416.994(a) and (b). Medical improvement is

---

[4]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

any decrease in the medical severity of a claimant's impairments which was present at the time of the most recent favorable medical decision that the claimant was disabled. 20 C.F.R. § 416.994(b)(1)(i). A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with the claimant's impairments. Id. Medical improvement is related to a claimant's ability to work if there has been a decrease in the severity as defined in paragraph (b)(1) and an increase in the claimant's functional capacity to perform basic work activities. 20 C.F.R. § 416.994(b)(1)(iii).

Based upon a review of the record,[5] the undersigned finds that substantial evidence of record supports the ALJ's decision. As noted supra, in October 1992, it was determined that Plaintiff, then a minor, was disabled due to severe post traumatic stress disorder and oppositional defiant disorder, such that she met the requirements of Listing 112.06. (Tr. 30, 149-180). Records related to her condition since that time and which are relevant to this appeal, include Stanton Road Clinic records from July 20, 2000 through May 31, 2001. (Id. at 191-192, 194, 274-284). These records reflect that Plaintiff received treatment with medication for gastroesophageal reflux disease ("GERD"), obesity and

---

[5] While the undersigned has reviewed the record in its entirety, records relating to Plaintiff's mental exams and alleged mental impairment have not been highlighted given that she has not challenged the ALJ's finding that she does not have a diagnosable psychiatric impairment at the present time.

headaches, and complained of mild back/lower abdominal pain.  (Id.) Her examinations revealed a nontender abdomen with positive bowel sounds, an absence of extremity clubbing, cyanosis or edema, mild erythema, normal motor muscle strength and intact sensation, and a normal brain MRI scan.  (Id.)  Plaintiff also reported improvement with her headaches and that her GERD was well controlled with medication.  (Id. at 279).

On August 24, 2000, Plaintiff was examined at USA Medical Center's Emergency Center for complaints of vaginal bleeding and back/abdominal pain.  (Id. at 181-188).  Her exam revealed that she was alert/oriented in three spheres and had a nontender abdomen with positive bowel sounds.  (Tr. 181-188).  She had no extremity clubbing, cyanosis or edema.  (Id.)  She was treated with medication.  (Id.)  Upon discharge, she ambulated without assistance, reported a decrease in pain, and had no self-care needs.  (Id.)

On January 25, 2001, Plaintiff reported in a pain questionnaire that she has pain in her back from a gunshot wound which has worsened with age and is present all the time; that she takes Naproxen which is effective in relieving her back pain for 3-6 hours and does not have any side effects; and that she sometimes uses a back brace or receives massages to relieve the pain.  (Id. at 118-119).

On February 21, 2001, consultative clinical psychologist James

F. Chudy, Ph.D. ("Dr. Chudy") evaluated Plaintiff for her alleged problems with depression, "bad nerves" and poor memory. (Id. at 195-198). Dr. Chudy's records reflect that Plaintiff:

- Reported a history of receiving a gunshot to her back when she was 15 years old and alleged chronic back pain; she never returned to school or obtained a GED.

- Claims that the bullet lodged in her back gives her pain and that she cannot sit for long, without needing to stretch/lay down; that she does not sleep well due to pain; and that the pain has caused her physical limitations - it is difficult for her to cook/clean.

- Has crying spells several times per week, low self-esteem, is sometimes forgetful, has difficulty concentrating, is depressed about her weight, and has a nasty attitude and is irritable, but denies having angry outbursts.

- Reports that in her free time, she likes to play games and go to the movies.

- Can, based upon his exam, complete all personal and domestic activities of daily living independently and that she knows how to drive, her reading/writing skills are limited, she is slow to count money and make change, but she shops independently.

- Is obese but displayed no obvious difficulties with fine/gross motor skills.

(Tr. 195-198).

Additionally, Dr. Chudy noted that Plaintiff's WAIS-III testing revealed borderline intellectual functioning. (Id. at 197-198). Plaintiff described her activities of daily living as getting up, eating, watching television, reading, cleaning the house occasionally, looking out the window, taking naps or a bath,

and going to bed when she falls asleep.  (Id. at 197).  Dr. Chudy diagnosed Plaintiff with borderline intellectual functioning and a reported history of status post gunshot wound.  (Id. at 197-198). He opined that a favorable response to treatment could not be expected within 6-12 months.  (Id.)

On April 3, 2001, Plaintiff was examined by consultative osteopath Eric G. Becker, D.O. ("Dr. Becker"), at which time Plaintiff reported a history of a gunshot wound to her back when she was 15.  (Id. at 199-201).  An examination revealed that her gunshot wound was without bony/nerve damage, paresthesias/paresis, that the resultant chronic nonradiating back pain was relieved with Naprosyn (for which she had not sought significant treatment), and that her indigestion was relieved with medication.  (Tr. 199-201). Plaintiff reported that she cares for her own personal needs, performs household chores/cleaning, attends church services and shops.  (Id. at 199).  Dr. Becker observed that Plaintiff was 300 pounds, alert, oriented in three spheres, cooperative, demonstrated a soft, nontender abdomen without masses, had no gross sensory deficits, had normal bilateral upper/lower extremity muscle strength and ranges of motion, normal hand grip, 5/5 strength, anterior thoracolumbar flexion from 0-90 degrees and the ability to squat/rise.  (Id. at 200).  He noted that "L-spine X-rays were not obtainable due to her exceeding the weight limit of our facility." (Id.)  Dr. Becker diagnosed her with history of a lower lumbar

12

gunshot wound with "otherwise unremarkable range of motion[,]" morbid obesity, and a history of GERD. (Id.)

On April 27, 2001, USA conducted a brain MRI for pseudotumor. (Tr. 285-286). The results were normal other than minimal mucosal thickening of the right maxillary sinus. (Id.) On May 17, 2001, State Agency psychologist Donald E. Hinton, Ph.D. ("Dr. Hinton") completed a psychiatric review technique form finding that Plaintiff's activities of daily living and past evaluation "support borderline intellectual functioning." (Id. at 202-215).

Records from Stanton Road Clinic from July 19, 2001-January 23, 2002 reflect that Plaintiff received treatment (with medication) for narcolepsy, GERD, depression and morbid obesity. (Id. at 274-278). Her exams revealed a nontender abdomen with positive bowel sounds, no extremity clubbing, cyanosis or edema, normal muscle strength/sensation/reflexes, no gait disturbance, reported improvement of headaches from Naprosyn and a loss of 10 pounds. (Id.) Plaintiff was instructed to continue to try to lose weight and exercise, and was given Prozac, Topamax, Prevacid, Indocin and Provigil, a nutrition referral, and was started on antidepressants. (Id.)

From October 17, 2002-April 29, 2003, Plaintiff was treated at Mobile County Health Department ("MCHD"). (Tr. 287-292). She reported that she fell on her back in the bathtub, and had pain in her arms and knees. (Id.) She also mentioned her prior gunshot

13

wound.   (<u>Id</u>.)   Plaintiff was instructed to lose weight and to diet/exercise.   (<u>Id</u>.)   Her exams revealed only mild abdominal tenderness, no extremity edema and no extremity loss of motion (despite her complaints of recurrent lower back, elbow and other joint pains).   (<u>Id</u>. at 289, 291).   She was prescribed medication for a gastrointestinal disorder, abdominal pain and morbid obesity. (<u>Id</u>. at 287-292).

On July 8, 2003, medical expert Charles E. Herlihy, M.D. ("Dr. Herlihy") reported that Plaintiff had borderline intellectual functioning (Full Scale IQ 70) and a status post gunshot wound to her back with mild-moderate symptoms of discomfort by history. (Tr. 259-264).   He opined that Plaintiff's impairments did not meet the Listings because she could function reasonably well despite her IQ level and she had no diagnosable psychiatric impairment.   (<u>Id</u>.) He stated that from his review of the record, he did not see any post traumatic stress disorder, and he found that she "needs medical and/or orthopedic evaluation to give opinion re: her post gunshot wound status." (<u>Id</u>. at 261).   Dr. Herlihy concluded that "[s]he does <u>not</u> have marked limitations from this." (<u>Id</u>. at 262 (emphasis in original)).

As noted <u>supra</u>, while Plaintiff lists three issues on appeal, they are actually one in the same: namely, whether the ALJ failed to find that Plaintiff's impairments meet, equal or medically equal Listing 12.05C because he failed to determine whether her obesity

and back pain due to residual effects from a gunshot wound impose additional and significant physical work-related limitations of function.   Listing 12.05C, which falls under § 12.00 MENTAL DISORDERS, provides in pertinent part, as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied ···· C. **A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function**.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (emphasis added).[6] Accordingly, a claimant meets the criteria for presumptive disability under Listing 12.05(c) when the claimant presents a valid IQ score of 60-70, an onset of impairment before age 22 *and* evidence of an additional and significant mental or physical impairment (*i.e.*, having more than "minimal effect" on the claimant's ability to perform basic work activities).   See, *e.g.*, Edwards by Edwards v. Heckler, 755 F.2d 1513, 1516 (11th Cir. 1985).[7] Based upon a review of the record, the undersigned finds that substantial evidence supports the ALJ's determination that

---

[6]Cobb v. Barnhart, 296 F. Supp. 2d 1295 (N.D. Ala. 2003); Davis v. Shalala, 985 F.2d 531 (11th Cir. 1993)(quoting Listing 12.05C).

[7]See also *e.g.*, Wilkinson on behalf of Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987); Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir. 1991); Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Berryman v. Massanari, 170 F. Supp. 2d 1180, 1186-1187 (N.D. Ala. 2001); Cobb, 296 F. Supp. at 1296-1297.

Plaintiff does not meet Listing 12.05C because she does not fulfill the second requirement of having "a physical or other mental impairment imposing additional and significant work-related limitation of function."   20 C.F.R. Pt. 404, Subpt. App. 1, § 12.05C.

Specifically, while the medical records reflect that Plaintiff suffers some residuals from a gunshot wound to her back, there is no evidence which demonstrates that this impairment is so limiting as to meet Listing 12.05C, which requires that the impairment be accompanied by work-related functional limitations.[8]   In his decision, the ALJ recognized Plaintiff's allegations of mild back pain from which "she gets mild relief from . . . Naprosyn."  (Tr. 19).  The ALJ also noted that Dr. Becker's April 2001 examination of Plaintiff was unremarkable (she had no deformity anywhere in the region of the gunshot wound, her musculoskeletal exam revealed hand grip, an unremarkable range of motion and bilateral upper and lower extremities all having 5/5 strength, her anterior thoracolumbar flexion was from 0-90 degrees, and she was able to squat/rise).  (Id. at 20-21).  Similarly, the October 2000, December 2000, March

---

[8]See, e.g., Keyte v. Barnhart, 2005 WL 1959682 (W.D. Va. Aug. 16, 2005) (finding that even though plaintiff suffered a gunshot wound to his arm, substantial evidence supported the ALJ's finding that he did not suffer from a severe physical impairment); Kearse v. Massanari, 73 Fed. Appx. 601 (4th Cir. 2003) (per curiam) (unpublished) (holding that although the record revealed that plaintiff clearly suffered deficiencies of concentration as a result of a gunshot wound, substantial evidence supported a finding that the deficiencies did not significantly limit his ability to work).  See also Johnson v. Apfel, 2000 WL 205091 (S.D. Ala. Feb. 4, 2000).

2001, May 2001 and January 2002 Stanton Road Clinic records make no mention of any back pain, although the April 2001 record contains a brief mention of back pain.  (<u>Id</u>. at 274-284).

Additionally, Plaintiff's testimony and reports support the ALJ's findings.  While Plaintiff reported that when she stands or walks for long periods of time and/or exercises, her back hurts, she also reported that she lives by herself and can bathe, groom and dress herself, grocery shop, drive her car and clean her house. (<u>Id</u>. at 34-36, 121-136, 310-312, 334-336).  Plaintiff also reported that she experiences some relief from the pain by soaking in hot water and propping herself up with a pillow.  (<u>Id</u>. at 338). Plaintiff also indicated that Naprosyn is effective in relieving her back pain and has no side effects.  (<u>Id</u>. at 118-119, 199).

Moreover, the undersigned's review of the record reveals that Plaintiff was only hospitalized for one night following the gunshot wound and she did not have bony or nerve damage, paresthesias or paresis from the wound.  (Tr. 181, 191, 194, 199, 274, 276, 277-280, 282-283, 289, 310).  Likewise, the record reveals that Plaintiff's physical exams - from Dr. Becker, MCHD and USA/Stanton Road Clinic - reveal an absence of extremity clubbing, cyanosis or edema; normal muscle strength throughout, including normal bilateral upper and lower extremity muscle strength, normal ranges of motion and normal hand grip; interior thoracolumbar flexion from 0-90 degrees (unremarkable); mild erythema; intact and normal

17

sensation; normal reflexes; no gait disturbances; reports of decrease in pain; no loss of motion; and the ability to squat and rise. (Id. at 181-188, 191, 194, 200, 274-284, 289, 291).

Thus, Plaintiff's back pain is not disabling because its severity is simply not supported by the record and it is not accompanied by any physical work-related functional limitations. See, e.g., Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Accordingly, the ALJ did not err in finding that Plaintiff did not meet Listing 12.05C as the record is devoid of any evidence that the residuals from her gunshot wound impose additional and significant physical work-related limitations of function on her.[9]

Likewise, Plaintiff's contention that the ALJ failed to assess whether her obesity affected her ability to perform work-related functions, and thus, whether it met the second prong of the Listing, is not supported by the record. (Doc. 12). Although the record reflects that Plaintiff is obese (Tr. 274-292), there is absolutely nothing in the record which demonstrates that Plaintiff's obesity is accompanied by work-related limitations of functions so as to satisfy the second prong of Listing 12.05C. While obesity is mentioned throughout the medical records, a searching review of the records fails to reveal any physical

_____

[9]See, e.g., Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987). See also generally, Keyte, 2005 WL 1959682; Kearse, 73 Fed. Appx. 601; McKeon v. Shalala, 876 F. Supp. 351 (D. Mass. 1995) (holding that though claimant had suffered gunshot wound resulting in perforation of small bowel and injury to femoral nerve, substantial evidence supported determination that he was not disabled and retained functional capacity for past work).

limitations imposed by Plaintiff's obesity.  Notably, Plaintiff has failed to point to any evidence that suggests that her obesity significantly impairs her ability to work.  In fact, during the administrative hearings, Plaintiff never even identified obesity as one of the reasons that she is unable to work.[10]  Plaintiff reported that she has always been heavy, and that she can bathe, groom and dress herself, grocery shop, and drive her car.  (Tr. 34-36, 121-136, 197, 199-201, 304, 309-312, 333-336).  Plaintiff also indicated that she can clean her house with assistance.  (Id.)

Additionally, it is significant the physical examinations of Plaintiff did not result in the identification of any functional limitations.  The exams from Stanton, USA, and Dr. Becker, all show soft, nontender abdomen with positive bowel sounds; normal to only mildly abnormal objective medical musculoskeletal findings including: normal muscle strength throughout her body; normal bilateral upper and lower extremity muscle strength and normal hand grip; unremarkable anterior thoracolumbar flexion from 0-90 degrees; normal bilateral upper/lower extremity ranges of motion; no gait disturbances; and the ability to squat/rise.  (Tr. 181-188, 191-192, 194, 200, 274-284, 291).  In February 2001, Dr. Chudy's notes also reveal that while Plaintiff was obese and alleged depression due to same, she displayed no obvious difficulties with

_____

[10]Plaintiff instead claimed that her back pain and depression problems were the reasons that she is unable to work.  (Id. at 331).

19

fine/gross motor skills and did not allege any physical impairment due to her obesity. (Id. at 195-198). Moreover, while Dr. Becker's April 2001 exam revealed that Plaintiff was 300 pounds, morbidly obese and that L-spine X-rays were not obtainable due to her exceeding the weight limit of the facility, he found that she had "unremarkable ranges of motion." (Id. at 200). From October 17, 2002-April 29, 2003, Plaintiff was treated at MCHD, where the exams revealed only mild abdominal tenderness, no extremity edema and no extremity loss of motion. (Id. at 289, 291). Further, the record is totally devoid of any exertional limitations accompanying Plaintiff's obesity and she has not alleged any obesity-related respiratory, circulatory, endocrinological or other impairments or limitations. Accordingly, the ALJ's decision, that Plaintiff did not meet Listing 12.05C, was proper given the absence of any evidence that her obesity resulted in an additional and significant physical work-related limitation of function.

Finally, Plaintiff argues that the ALJ erred because he failed to obtain a consultative orthopedic examination or other medical evaluation to determine the extent of her physical impairments (obesity and gunshot wound residuals in her back) on her ability to work under 20 C.F.R. § 416.919a(2)(b)(1)). (Doc. 12). Case law provides that the ALJ has a duty to fully and fairly develop the record. See, e.g., Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003); Welch v. Bowen, 854 F.2d 436, 438 (11th Cir. 1988);

Smith v. Schweiker, 677 F.2d 826, 829 (11th Cir. 1982); Cowart v.
Schweiker, 662 F.2d 731, 735-736 (11th Cir. 1981).   The ALJ,
however, is only required to order additional medical tests and
exams when a plaintiff's medical sources do not give sufficient
medical evidence about an impairment to determine whether she is
disabled.   20 C.F.R. § 416.917; Holladay v. Bowen, 848 F.2d 1206,
1209 (11th Cir. 1988); Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th
Cir. 1984) (providing that failure to order such an evaluation is
reversible error).   In fulfilling his duty to conduct a full and
fair inquiry, an ALJ is not required to order a consultative
examination unless the record establishes that such an examination
is necessary to enable him to render an informed decision.[11]   See,
e.g., Wind v. Barnhart, 133 Fed. Appx. 684, 693 (11th Cir. 2005)
(unpublished) (citing Reeves, 734 F.2d at 522 n.1).   Under the
regulations, the ALJ may determine that a consultative examination
or other medical tests are necessary.   20 C.F.R. § 416.917.
Development of the record then requires the ordering of additional
examinations only where there is uncertainty or conflicting medical
evidence; this case, however, does not present either circumstance.

As noted supra, the medical evidence of record provided the
ALJ with a reasonable basis upon which to render his decision.   The

---

[11]See e.g., White v. Barnhart, 373 F. Supp. 2d 1258, 1266 (N.D. Ala.
2005); Dixon v. Apfel, 2000 WL 1844689 (S.D. Ala. Nov. 8, 2000); Holladay, 848
F.2d at 1209; Cowart, 662 F.2d at 735-736; Smith, 677 F.2d at 829. See also
Welch v. Bowen, 854 F.2d 436 (11th Cir. 1988); Nelms v. Bowen, 803 F.2d 1164
(11th Cir. 1986).

record does not support a need for further evaluation as the ALJ had adequate information to assess Plaintiff's ability to work properly.  See supra.  See also e.g., Wind, 133 Fed. Appx. at 693; Doughty v. Apfel, 245 F.3d 1274, 1281 (11th Cir. 2001). Additionally, Plaintiff failed to produce evidence demonstrating that it was necessary for the ALJ to order such a consultative evaluation before making his decision.  Wind, 133 Fed. Appx. at 693.  See also Ellison, 355 F.3d at 1276 (stating that "the claimant bears the burden of proving that [s]he is disabled, and, consequently . . . is responsible for producing evidence in support of [her] claim").[12]  Indeed, Plaintiff fails to point to any specific "gap" in the record for which a consultative examination would be needed.  Similarly, the evidence of record does not show any uncertainty or conflicting medical evidence that would make further information necessary to enable the ALJ to render a decision.  See, e.g., Kilcrease v. Barnhart, 347 F. Supp. 2d 1157, 1162 (M.D. Ala. 2004).  In sum, the evidence of record (i.e., medical and non-medical sources) provided the ALJ with sufficient evidence to reach a decision.  Id.  Accordingly, it was not necessary for him to order a consultative evaluation.  Id.

**V.   Conclusion**

---

[12]The ALJ is not required to order consultative examinations unless Plaintiff raises "the requisite suspicion" that the examination is "necessary" to discharge the ALJ's responsibility to conduct a full inquiry into the facts.  See, e.g., Haywood v. Sullivan, 888 F.2d 1463, 1472 (5th Cir. 1989).

For the reasons set forth, and upon consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income benefits, is due to be **AFFIRMED.**

The attached sheet contains important information regarding objections to this <u>report and recommendation.</u>

**DONE** this the **21st** day of **July, 2006.**

      **/s/ Sonja F. Bivins**
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

/s/SONJA  F.  BIVINS
**UNITED STATES MAGISTRATE JUDGE**